# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

RECEIVED

MAY 09 2025

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

DUSTIN THOMAS HOUSE DARDEN,
Plaintiff,
v.
MUNICIPALITY OF ANCHORAGE;
ANCHORAGE POLICE DEPARTMENT;
SERGEANT DAVID NOLL (Badge #30210);
OFFICER MALDONADO (Badge #63536);
LIEUTENANT DAVIDSON;
MICHAEL KERLE, CHIEF OF POLICE OF ANCHORAGE;
ANCHORAGE POLICE DEPARTMENT INTERNAL AFFAIRS;
JOHN LONG, INTERNAL AFFAIRS INVESTIGATOR;
Defendants.

Case No.: _____

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND SUPPLEMENTAL STATE LAW CLAIMS

### JURY TRIAL DEMANDED

Plaintiff Dustin Thomas House Darden, appearing pro se, brings this action against Defendants pursuant to 42 U.S.C. § 1983 and the laws of the State of Alaska, and alleges as follows:

PRELIMINARY STATEMENT

This civil rights action challenges the unconstitutional detention, arrest, search, and seizure of Plaintiff by Anchorage Police Department officers on May 13, 2023, in direct violation of Plaintiff's clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

This action seeks to vindicate Plaintiff's constitutional rights, which were violated when he was subjected to an unlawful, retaliatory arrest immediately after exercising his constitutionally protected rights to free speech, religious expression, and petitioning government officials for redress of grievances — the very constitutional protections Plaintiff was discussing with Defendant Maldonado before being unlawfully arrested.

This action also challenges the Municipality of Anchorage's deliberately indifferent policies, practices, and customs that directly caused the violation of Plaintiff's constitutional rights, as well as the Municipality's failure to properly train, supervise, and discipline its police officers, creating a culture of impunity within the Anchorage Police Department.

The irony of this case is profound: Plaintiff was arrested for requesting enforcement of traffic laws against a police sergeant immediately after discussing with a Field Training Officer how police routinely violate citizens' constitutional rights through intimidation tactics — only to have those same officers demonstrate this exact pattern of constitutional violations against Plaintiff.

This action further challenges the practices of the Anchorage Police Department Internal Affairs and specifically Defendant John Long for their deliberate indifference to violations of Plaintiff's rights, their refusal to provide records relating to misconduct investigations, and their systematic failure to hold officers accountable, which mirrors misconduct

patterns identified in the Department of Justice's 2023 investigation of Minneapolis Police Department.

JURISDICTION AND VENUE

This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983, which provides a remedy for the deprivation of federal constitutional rights under color of state law.

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as the federal claims and derive from a common nucleus of operative fact. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) (establishing supplemental jurisdiction where state claims arise from the same "common nucleus of operative fact" as federal claims).

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because all of the events giving rise to Plaintiff's claims occurred within the District of Alaska, all Defendants reside or maintain their principal place of business in this district, and the Municipality of Anchorage is located in this district. See Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F.

Supp. 2d 1183, 1193 (S.D. Cal. 2007) (confirming venue is proper in the district where a substantial part of the events giving rise to the claim occurred).

PARTIES

Plaintiff Dustin Thomas House Darden is, and at all relevant times was, a citizen of the United States and a resident of the Municipality of Anchorage, Alaska. Plaintiff is also a school bus driver in Anchorage, professionally trained and certified in proper safety protocols for school zones and parking lots, which gave him particular expertise to recognize the dangerous driving of Defendant Noll in a school zone. This professional expertise makes Plaintiff's observations about Defendant Noll's speeding in a school zone particularly credible and reliable.

Defendant Municipality of Anchorage (hereinafter "Municipality") is a municipal corporation organized under the laws of the State of Alaska. The Municipality is the legal entity responsible for itself and for the Anchorage Police Department and is a "person" subject to suit under 42 U.S.C. § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) (holding that local governments are "persons" under § 1983 and can be sued for constitutional violations caused by their policies or customs). The Municipality, through its officials with final policymaking authority, was

the moving force behind and was directly responsible for the deprivation of Plaintiff's constitutional rights through its policies, practices, customs, failure to train, failure to supervise, and failure to discipline. Proper notice of Plaintiff's claims has been given to the Municipality prior to the filing of this action.

Defendant Anchorage Police Department (hereinafter "APD") is a department of the Municipality of Anchorage and is responsible for law enforcement within the municipality. APD acts through its officers, agents, employees, and representatives. APD's policies, practices, and customs are attributable to the Municipality. APD is named as a separate defendant because it maintains its own insurance policies, indemnification provisions, and budget separate from the Municipality. See Brandon v. Holt, 469 U.S. 464, 471-72 (1985) (recognizing that a police department may be sued under § 1983 when its policies violate constitutional rights); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (holding that municipal liability attaches when a decision that violates constitutional rights is made by officials with final policymaking authority).

Defendant Sergeant David Noll (Badge #30210) was, at all times relevant to this Complaint, employed by the APD as a Traffic Sergeant with supervisory authority over traffic enforcement. Defendant Noll is sued in his individual and official capacities. At all relevant times, Defendant Noll was acting under color of state law and within the scope of his

employment with APD. As a supervising officer, Defendant Noll had a duty to understand and follow traffic laws, especially in school zones, and to properly supervise officers under his command, including Defendant Maldonado. Defendant Noll's ignorance of basic traffic laws despite his supervisory position in traffic enforcement demonstrates gross negligence and deliberate indifference to public safety and the constitutional rights of citizens. See Chew v. Gates, 27 F.3d 1432, 1445 (9th Cir. 1994) (holding that supervisors may be liable for constitutional violations when they act with deliberate indifference to the rights of persons with whom their subordinates come into contact).

Defendant Officer Maldonado (Badge #63536) was, at all times relevant to this Complaint, employed by the APD as a Field Training Officer. As a Field Training Officer, Defendant Maldonado was responsible for training new officers in constitutional policing practices, including proper arrest procedures and respect for constitutional rights. Defendant Maldonado is sued in his individual and official capacities. At all relevant times, Defendant Maldonado was acting under color of state law and within the scope of his employment with APD. Defendant Maldonado had a duty to intervene to prevent constitutional violations by other officers, including Defendant Noll. See United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (recognizing that police officers have a duty to intercede when fellow officers violate constitutional rights).

Defendant Lieutenant Davidson was, at all times relevant to this Complaint, employed by the APD as a supervising officer with responsibility for reviewing officer conduct and addressing citizen complaints. Defendant Davidson is sued in his individual and official capacities. At all relevant times, Defendant Davidson was acting under color of state law and within the scope of his employment with APD. Defendant Davidson had direct supervisory authority over both Defendant Noll and Defendant Maldonado and personally reviewed and approved their unconstitutional conduct, thus ratifying their actions. See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (holding that a police chief's ratification of unconstitutional conduct can be the basis for municipal liability).

Defendant Michael Kerle was, at all times relevant to this Complaint, the Chief of Police of the Anchorage Police Department, responsible for establishing and implementing policies, practices, and customs regarding training, supervision, discipline, and conduct of all APD officers. Defendant Kerle is sued in his individual and official capacities. At all relevant times, Defendant Kerle was acting under color of state law and within the scope of his employment with the Municipality. As Chief of Police, Defendant Kerle was the final policymaker for law enforcement matters within the Municipality of Anchorage. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (holding that municipal liability

attaches for decisions made by officials who have "final policymaking authority"); City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (recognizing that "officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability").

Defendant Anchorage Police Department Internal Affairs (hereinafter "APD Internal Affairs") is a unit within APD responsible for investigating allegations of officer misconduct, ensuring departmental integrity, and maintaining public trust. APD Internal Affairs is responsible for investigating and addressing citizen complaints about officer misconduct, and for ensuring that officers comply with department policies and the law. APD Internal Affairs also has responsibility for documenting and investigating civilian complaints and maintaining records of such investigations.

Defendant John Long was, at all times relevant to this Complaint, employed by APD Internal Affairs as an investigator responsible for handling complaints against APD officers, including providing information to complainants and investigating alleged misconduct. Defendant Long is sued in his individual and official capacities. At all relevant times, Defendant Long was acting under color of state law and within the scope of his employment with APD. Defendant Long's misconduct in refusing to provide recordings and documents relating to Plaintiff's complaint is part of a pattern and practice within APD that

mirrors conduct identified in the Department of Justice's 2023 Minneapolis Police Department pattern-or-practice investigation, which found that department also routinely failed to properly investigate complaints and provide records of misconduct.

FACTUAL ALLEGATIONS

On or about May 13, 2023, Plaintiff observed Defendant Officer Maldonado conducting a traffic stop of a vehicle that Plaintiff estimated was traveling approximately 66 MPH in a construction zone with a posted speed limit of approximately 45 MPH.

Plaintiff, who was on foot, maintained a respectful distance while observing the interaction between Defendant Maldonado and the driver, standing on public property and exercising his First Amendment right to observe police conduct. See Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011) (recognizing that observing police officers performing their duties in public is protected by the First Amendment).

Defendant Maldonado issued only a warning to the driver of the speeding vehicle and allowed the driver to leave without issuing a citation, demonstrating the selective and arbitrary enforcement of traffic laws that would later manifest in Defendant Noll's refusal to accept accountability for his own traffic violations.

After the driver was released, Plaintiff engaged in a peaceful conversation with Defendant Maldonado regarding constitutional rights during police encounters, specifically focused on Fourth Amendment protections—the very rights that would subsequently be violated in Plaintiff's case.

During this conversation, Plaintiff expressed his concern about how APD officers are trained to intimidate drivers into voluntarily forfeiting their Fourth Amendment rights against unreasonable searches and seizures by demanding to see driver's licenses, registration, and proof of insurance even when no crime has been committed or when there is no reasonable, articulable suspicion of a crime. This constituted protected speech on matters of public concern. See Lane v. Franks, 573 U.S. 228, 235-36 (2014) (holding that speech on matters of public concern is entitled to First Amendment protection).

Plaintiff informed Defendant Maldonado that he was a United States citizen exercising his freedom of the press under the First Amendment to inform the public about their state and federal constitutional rights, establishing that Plaintiff was engaged in constitutionally protected activity. See Branzburg v. Hayes, 408 U.S. 665, 704 (1972) (recognizing that the First Amendment protects "the right to gather news"); Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a First Amendment right to gather information about public officials, including police officers, performing their public duties).

Plaintiff also expressly identified to Defendant Maldonado that Jesus Christ is his Lord and Savior, exercising his First Amendment right to freedom of religion, which is entitled to the highest level of constitutional protection. See Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2019 (2017) (reaffirming that the Free Exercise Clause "protect[s] religious observers against unequal treatment" and subjects laws that target religious beliefs to "the strictest scrutiny").

When Defendant Maldonado inquired about Plaintiff being intimidated by him, Plaintiff responded that whatever Defendant Maldonado was going to do would not work, asserting his right to be free from police intimidation and coercion. See Florida v. Bostick, 501 U.S. 429, 434 (1991) (holding that "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business'").

While Plaintiff was engaged in this peaceful conversation with Defendant Maldonado, Defendant Sergeant Noll arrived at the scene, driving a police vehicle at a speed well in excess of the posted 5 MPH limit in the school parking lot, estimated to be approximately 16-20 MPH based on Plaintiff's professional experience as a school bus driver.

As a trained and certified school bus driver, Plaintiff was particularly aware of the 5 MPH speed limit in school parking lots and the importance

of this safety measure for the protection of children and other vulnerable individuals. Plaintiff's professional training and certification gave him specific expertise to recognize dangerous driving in school zones, making his testimony particularly credible regarding Defendant Noll's excessive speed.

Defendant Sergeant Noll drove into the school grounds parking lot recklessly and aggressively, despite the presence of numerous vehicles in the parking lot during posted school grounds operating hours, demonstrating a willful disregard for public safety despite his position as a Traffic Sergeant.

Defendant Sergeant Noll came to a quick stop, positioning his police vehicle to directly face Plaintiff in an intimidating manner clearly intended to intimidate Plaintiff and interfere with his exercise of First Amendment rights. See City of Houston v. Hill, 482 U.S. 451, 461 (1987) (recognizing that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers").

The school parking lot had at least two clearly visible signs indicating a 5 MPH speed limit, which Defendant Noll disregarded while driving at a speed significantly higher than the posted limit, approximately 16-20mph.

Upon Defendant Sergeant Noll's approach, Plaintiff asked him why he was exceeding the posted 5 MPH speed limit in the school parking lot, a reasonable question given Plaintiff's professional background and

legitimate public safety concerns.

Defendant Sergeant Noll responded that he believed the speed limit was 15 MPH, demonstrating a lack of knowledge of basic traffic regulations despite being the supervisor of APD's Traffic Division. This admission of ignorance of basic traffic laws is particularly troubling given Defendant Noll's supervisory position and responsibility for traffic enforcement, and constitutes gross negligence in the performance of his official duties.

Plaintiff then requested that Defendant Officer Maldonado issue a citation to Defendant Sergeant Noll for the observed speed violation, which constituted a lawful request for enforcement of the law and petition to government officials for redress of grievances protected by the First Amendment. See Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011) (holding that the Petition Clause protects the right "to petition the Government for a redress of grievances").

In direct response to this request, and without first asking for Plaintiff's name or identifying information, Defendant Sergeant Noll suddenly grabbed Plaintiff's wrist with excessive force and placed him in handcuffs, demonstrating that Plaintiff's arrest was a direct retaliation for his protected speech. See White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (holding that "clearly established law prohibits government officials from retaliating against individuals for engaging in protected speech").

The timing of Defendant Noll's actions — occurring immediately after

Plaintiff requested that Noll be cited for speeding—establishes a clear causal connection between Plaintiff's protected speech and the retaliatory arrest. See Lacey v. Maricopa County, 693 F.3d 896, 916 (9th Cir. 2012) (holding that temporal proximity between protected speech and adverse action can establish retaliatory intent).

When Plaintiff stated that this was a warrantless arrest, Defendant Sergeant Noll falsely claimed that Plaintiff had three outstanding warrants, despite having made no effort to verify Plaintiff's identity prior to the arrest. This post-hoc fabrication of a justification for the arrest demonstrates consciousness of guilt and intent to deprive Plaintiff of his constitutional rights. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (establishing that knowingly false statements made to justify a search or seizure violate the Fourth Amendment). Sargent Noll said you are being arrested and detained.

At no point before the arrest did either Defendant Sergeant Noll or Defendant Officer Maldonado ask for Plaintiff's name or identification, making it impossible for them to know whether Plaintiff had any outstanding warrants. This complete disregard for basic police procedures demonstrates that the arrest was pretextual and retaliatory in nature. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (holding that while the subjective intent of an officer does not generally invalidate objectively justified actions, pretextual arrests may still violate the Constitution when

they are retaliatory in nature).

The false claim of outstanding warrants was made with knowledge of its falsity or with reckless disregard for the truth, as Defendants had no basis whatsoever to believe that Plaintiff had any outstanding warrants without first identifying him. See Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir. 1995) (holding that a police officer who makes deliberately false statements or shows reckless disregard for the truth in the course of obtaining a warrant violates the Fourth Amendment).

Plaintiff verbally informed the officers that he did not consent to being touched, handcuffed, searched, or having his property seized, but these constitutional objections were ignored, further demonstrating the officers' deliberate indifference to Plaintiff's clearly established constitutional rights. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (establishing that consent is an exception to the warrant requirement); Florida v. Jimeno, 500 U.S. 248, 252 (1991) (recognizing that individuals can limit the scope of consent).

The officers seized Plaintiff's video recording device, which had been recording the entire encounter up to that point, depriving Plaintiff of evidence of the officers' misconduct. This seizure was particularly egregious as it targeted the very device that could have documented the officers' unconstitutional conduct, suggesting consciousness of guilt and intent to conceal evidence. See Glik v. Cunniffe, 655 F.3d 78, 82-83 (1st Cir.

2011) (recognizing the right to record police officers performing their duties in public).

The seizure of Plaintiff's recording device violated not only his Fourth Amendment rights but also his First Amendment right to record police officers performing their duties in public, a right that has been clearly established by the Ninth Circuit. See Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a First Amendment right to film matters of public interest).

During the detention, as handcuffs were removed, Plaintiff felt what he believed to be a needle or sharp object poked into his back, causing him to fear for his safety and well-being. This use of a potentially dangerous object against Plaintiff constituted excessive force and assault in violation of the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989) (establishing that claims of excessive force should be analyzed under the Fourth Amendment's "reasonableness" standard).

Following this incident, Plaintiff contacted Defendant Lieutenant Davidson, who admitted to having reviewed all video and audio recordings of the incident but nevertheless defended the officers' actions and made misleading statements about the encounter, demonstrating a departmental pattern of defending unconstitutional conduct. See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (holding that ratification of unconstitutional conduct by a supervisor can establish

liability).

Defendant Lieutenant Davidson's defense of the officers' actions despite video evidence demonstrating constitutional violations reflects a policy, practice, or custom of defending officer misconduct rather than enforcing constitutional standards. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (recognizing that municipal liability can be established through the actions of officials with final policymaking authority).

Plaintiff requested to speak with Defendant Lieutenant Davidson's supervisor, and was told that a Captain would contact him, but no such contact ever occurred, reflecting the Department's pattern of ignoring citizen complaints and failing to provide adequate supervisory review of officer misconduct. See Hunter v. County of Sacramento, 652 F.3d 1225, 1234 (9th Cir. 2011) (holding that a custom or practice of ignoring complaints can establish municipal liability).

Plaintiff has since obtained some police dash camera footage that verifies portions of the events, but APD has failed to produce dash camera footage that would show the speed at which Defendant Sergeant Noll was traveling in the school parking lot, suggesting intentional concealment of evidence of misconduct. See Bracey v. Grondin, 712 F.3d 1012, 1018 (7th Cir. 2013) (recognizing that "the intentional destruction of [evidence] can lead to an inference that the evidence would have been unfavorable to the destroyers").

Plaintiff subsequently contacted Defendant John Long of APD Internal Affairs to request recordings of his telephone conversation with Lieutenant Davidson and dash camera footage showing Defendant Noll's excessive speed. Defendant Long specifically told Plaintiff that "they do not provide information recordings regarding reports of misconduct of APD," directly mirroring the obstructionist practices identified in the Department of Justice's investigation of the Minneapolis Police Department, which found that MPD's "accountability system is fundamentally flawed" and "consistently fails at its core purpose."

Defendant Long's refusal to provide these recordings constitutes a violation of Alaska's public records laws and demonstrates a deliberate attempt to shield APD officers from accountability, consistent with the pattern identified in the Department of Justice's investigation of the Minneapolis Police Department, which found that department's accountability system was "an opaque maze, with multiple dead ends where meritorious complaints are dismissed without investigation and often for no discernable reason."

Defendant Long's response that "they do not provide recordings or conclusions of internal affairs investigations to public" further demonstrates that APD is operating as though it is above the law, witholding public records that would document officer misconduct, in direct violation of Alaska's public records laws and federal Freedom of

Information Act principles.

Despite multiple requests, the Municipality and APD have refused to provide complete footage of the incident, particularly footage that would document Defendant Noll's speeding in the school parking lot, suggesting a concerted effort to conceal evidence of misconduct. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (establishing that the destruction or withholding of evidence can lead to sanctions and adverse inferences).

APD Internal Affairs' practice of refusing to provide records relating to misconduct investigations directly mirrors conduct identified in the Department of Justice's 2023 investigation of the Minneapolis Police Department, which found that MPD's accountability system wrongfully dismissed complaints at intake, misclassified complaints, ignored explicit misconduct allegations, and diverted complaints involving serious misconduct.

Based on the totality of the circumstances, including the timing of the arrest and the officers' failure to follow basic police procedures, it is clear that the arrest of Plaintiff was retaliatory in nature, motivated by Plaintiff's protected speech regarding constitutional rights, his religious expression, and his request that a citation be issued to a supervising officer. See Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019) (recognizing that the timing and circumstances of an arrest can establish retaliatory intent).

The irony of Plaintiff being arrested for exercising his constitutional rights immediately after discussing those very rights with police officers demonstrates not only a retaliatory motive but a profound and systemic failure of training and supervision within APD. See City of Canton v. Harris, 489 U.S. 378, 390 (1989) (recognizing that a failure to train officers "about constitutional limits on the use of force" can establish municipal liability).

The pattern of misconduct demonstrated in this case is consistent with the Municipality's deliberate indifference to constitutional violations and inadequate training and supervision of APD officers, mirroring the systemic deficiencies identified in the Minneapolis Police Department by the Department of Justice's pattern-or-practice investigation. The Department of Justice found that the Minneapolis Police Department engaged in a pattern or practice of discriminatory policing, excessive force, and violation of First Amendment rights, all of which are reflected in Defendants' treatment of Plaintiff.

The actions taken against Plaintiff were not isolated incidents but reflect a broader pattern, practice, and custom of constitutional violations by APD officers, particularly in cases involving citizens who assert their constitutional rights or question officer conduct. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (establishing that a pattern or practice of constitutional violations can establish municipal liability).

Upon information and belief, the Municipality and APD have a pattern, practice, and custom of failing to discipline officers who violate citizens' constitutional rights, creating a culture of impunity that encourages further violations. See Larez v. City of Los Angeles, 946 F.2d 630, 647 (9th Cir. 1991) (recognizing that liability can attach when supervision is "so inadequate as to amount to deliberate indifference").

Upon information and belief, APD has received numerous complaints regarding officers' disregard for constitutional rights, failure to follow proper arrest procedures, and retaliatory arrests, but has failed to take corrective action, demonstrating deliberate indifference to these ongoing violations. See Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (holding that deliberate indifference can be established through a pattern of violations coupled with a failure to take corrective action).

The Department of Justice's investigation of the Minneapolis Police Department identified practices strikingly similar to those employed by APD, including retaliating against people for recording police activity, using unnecessary force against people exercising First Amendment rights, and arresting people without probable cause for questioning or criticizing police. The Department of Justice investigation found that the Minneapolis Police Department violated people's First Amendment rights in four ways that directly parallel Plaintiff's experience: (1) retaliating against protesters; (2) retaliating against journalists and unlawfully

restricting their actions; (3) penalizing people who challenge or question them during stops and calls for service; and (4) unlawfully interfering with individuals' right to observe and record police activity.

APD Internal Affairs' practices mirror those identified by the Department of Justice in its investigation of the Minneapolis Police Department, which found that Minneapolis Police Department's accountability system was "fundamentally flawed" with "multiple dead ends where meritorious complaints are dismissed without investigation and often for no discernable reason." The Department of Justice found that Minneapolis Police Department failed to conduct thorough, timely, and fair misconduct investigations, exactly as Defendants APD Internal Affairs and John Long have failed to properly investigate Plaintiff's complaint and have refused to provide records that would document officer misconduct.

The Individual Defendants' conduct was willful, wanton, and malicious, and was taken with reckless or callous indifference to Plaintiff's federally protected rights, warranting punitive damages. See Smith v. Wade, 461 U.S. 30, 56 (1983) (holding that punitive damages are available in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").


CLAIMS FOR RELIEF

FIRST CAUSE OF ACTION

Violation of the Fourth Amendment - Unreasonable Seizure (42 U.S.C. §
1983)

Against All Defendants

Plaintiff incorporates by reference all preceding paragraphs as if fully set
forth herein.

The Fourth Amendment to the United States Constitution, applicable to
the states through the Fourteenth Amendment, protects "[t]he right of the
people to be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures."

By handcuffing physically restraining and giving a verbal notice that "you
are being arrested and detained" to Plaintiff without probable cause,
reasonable suspicion, or legal justification, Defendants Noll and
Maldonado seized Plaintiff within the meaning of the Fourth Amendment.
See California v. Hodari D., 499 U.S. 621, 626 (1991) (defining seizure as
when an officer applies physical force or when the subject submits to a
show of authority).

The seizure of Plaintiff was objectively unreasonable under the Fourth
Amendment because:

a. Defendants lacked probable cause to arrest Plaintiff, as required by

Dunaway v. New York, 442 U.S. 200, 208 (1979), which established that "an arrest is not constitutionally valid unless it is accompanied by probable cause to believe that the individual has committed or is committing a crime";

b. Defendants lacked even reasonable suspicion to detain Plaintiff, as required by Terry v. Ohio, 392 U.S. 1, 21 (1968), which held that even brief detentions must be justified by reasonable, articulable suspicion of criminal activity;

c. Defendants failed to follow the clearly established requirement to identify Plaintiff and verify the existence of any alleged warrants before arresting him, as required by Baker v. McCollan, 443 U.S. 137, 142-143 (1979), which held that "a detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law'";

d. Defendants did not use "the least intrusive means reasonably available to verify or dispel [their] suspicion in a short period of time," as required by United States v. Sharpe, 470 U.S. 675, 686 (1985) and United States v. Mota, 982 F.2d 1384, 1388 (9th Cir. 1993); and

e. Defendants' claim of outstanding warrants was false and pretextual, as they had not identified Plaintiff or taken any steps to verify his identity prior to the arrest, and was made with knowledge of its falsity or with

reckless disregard for the truth, in violation of Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (establishing that knowingly false statements made to justify a search or seizure violate the Fourth Amendment).

At the time of Plaintiff's seizure, the right to be free from arrest without probable cause was clearly established, and no reasonable officer could have believed that there was lawful justification for handcuffing and detaining Plaintiff under the circumstances, as established by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (holding that officials can be on notice that their conduct violates established law even in novel factual circumstances).

The Ninth Circuit has consistently held that an arrest without probable cause violates the Fourth Amendment and can form the basis for a § 1983 claim. See Dubner v. City & County of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001) (holding that "the Fourth Amendment requires probable cause to arrest").

Defendants Noll and Maldonado directly participated in the unconstitutional seizure by physically restraining Plaintiff and applying handcuffs without lawful justification. See Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir. 1996) (holding

  officers who directly participate in an unconstitutional act can be held liable).

Defendant Davidson failed to intervene to prevent the violation of Plaintiff's constitutional rights despite having the opportunity and duty to do so, and subsequently ratified the unconstitutional conduct by defending it after reviewing the evidence. See United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (recognizing that police officers have a duty to intercede when fellow officers violate constitutional rights).

Defendants APD Internal Affairs and Long actively participated in covering up the constitutional violation by refusing to provide recordings and evidence that would document the misconduct, despite their duty to investigate and address complaints of constitutional violations. This refusal mirrors the obstructionist practices identified in the Department of Justice's investigation of the Minneapolis Police Department, which found that the department's accountability system consistently failed to address misconduct.

Defendants Kerle, APD, and the Municipality are liable for the unconstitutional seizure because:

a. They established and maintained policies, practices, and customs that caused the violation, including a policy, practice, or custom of arresting individuals without first establishing their identity or verifying warrants;

b. They failed to properly train officers regarding the constitutional

requirement of probable cause for arrests;

c. They failed to properly supervise and discipline officers who engaged in unconstitutional seizures, creating a culture of impunity; and

d. They ratified the unconstitutional conduct by defending it and failing to take corrective action after the violation occurred.

The Municipality and APD maintained a policy, practice, or custom of inadequate training, supervision, and discipline that amounted to deliberate indifference to constitutional rights and was the moving force behind the violation of Plaintiff's rights, as established by City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding that inadequate training can establish municipal liability when it amounts to "deliberate indifference to the rights of persons with whom the police come into contact") and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (establishing that municipalities can be liable when their policies or customs cause constitutional violations).

As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including but not limited to physical pain, emotional distress, fear, anxiety, humiliation, loss of liberty, and violation of his constitutional rights.

SECOND CAUSE OF ACTION

Violation of the Fourth Amendment - Unreasonable Search (42 U.S.C. §
1983)

Against All Defendants

Plaintiff incorporates by reference all preceding paragraphs as if fully set
forth herein.

By conducting a search of Plaintiff's person and seizing his recording
device without a warrant, probable cause, or any applicable exception to
the warrant requirement, Defendants Noll and Maldonado violated
Plaintiff's Fourth Amendment right to be free from unreasonable searches.

The Supreme Court has held that "searches conducted outside the judicial
process, without prior approval by judge or magistrate, are per se
unreasonable under the Fourth Amendment — subject only to a few
specifically established and well-delineated exceptions." Katz v. United
States, 389 U.S. 347, 357 (1967).

None of the established exceptions to the warrant requirement were
applicable in this case, as:

a. The search was not incident to a lawful arrest, as the arrest itself was
unlawful and pretextual, in violation of United States v. Robinson, 414 U.S.
218, 235 (1973), which requires a lawful arrest as a predicate for a search
incident to arrest;

b. Plaintiff did not consent to the search and explicitly stated his objection, as recognized in Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973), which requires voluntary consent for a consensual search;

c. There were no exigent circumstances justifying the search, as required by Warden v. Hayden, 387 U.S. 294, 298 (1967) (requiring "hot pursuit" or other emergency circumstances for warrantless searches);

d. There was no reasonable suspicion that Plaintiff was armed or dangerous justifying a Terry frisk, as required by Terry v. Ohio, 392 U.S. 1, 27 (1968) (holding that a frisk is only permitted when "a reasonably prudent man, in the circumstances, would be warranted in the belief that his safety or that of others was in danger"); and

e. There was no probable cause to believe that evidence of a crime would be found on Plaintiff's person or in his belongings.


As established in Riley v. California, 573 U.S. 373, 386 (2014), officers generally may not seize and search digital recording devices without a warrant, even incident to a lawful arrest, which this was not. The Court in Riley recognized the heightened privacy interests in digital devices and required officers to obtain a warrant before searching them, absent exceptional circumstances not present in this case.

The search and seizure of Plaintiff's recording device was particularly egregious because it targeted a device being used to exercise First

Amendment rights to record police conduct, creating an additional constitutional violation. See Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011) (recognizing "a constitutionally protected right to videotape police carrying out their duties in public").

The Ninth Circuit has recognized that the seizure of recording devices used to document police conduct implicates both First and Fourth Amendment concerns. See Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a First Amendment right to film matters of public interest).

Defendants APD Internal Affairs and Long compounded this violation by subsequently refusing to provide recordings and documentation related to the incident, effectively continuing the unreasonable seizure of information that would document the constitutional violations.

At the time of the search and seizure, the right to be free from warrantless searches without probable cause or an applicable exception was clearly established, and no reasonable officer could have believed that the search of Plaintiff and seizure of his recording device was lawful, as established by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

Defendants Noll and Maldonado directly participated in the unconstitutional search and seizure by physically searching Plaintiff and

taking his recording device without lawful justification. See Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir. 1996) (holding that individual officers are liable for their own unconstitutional conduct).

Defendant Davidson failed to intervene to prevent the violation of Plaintiff's constitutional rights despite having the opportunity and duty to do so, and subsequently ratified the unconstitutional conduct by defending it after reviewing the evidence. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (recognizing supervisory liability for ratification of unconstitutional conduct).

Defendants Kerle, APD, APD Internal Affairs, Long, and the Municipality are liable for the unconstitutional search and seizure because:

a. They established and maintained policies, practices, and customs that caused the violation, including a policy, practice, or custom of searching individuals and seizing recording devices without warrants or probable cause;

b. They failed to properly train officers regarding the constitutional requirements for searches and seizures, particularly with respect to digital recording devices following Riley v. California;

c. They failed to properly supervise and discipline officers who engaged in unconstitutional searches and seizures, creating a culture of impunity; and

d. They ratified the unconstitutional conduct by defending it and failing to

take corrective action after the violation occurred.

The Municipality and APD maintained a policy, practice, or custom of inadequate training, supervision, and discipline that amounted to deliberate indifference to constitutional rights and was the moving force behind the violation of Plaintiff's rights, as established by City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding that inadequate training can establish municipal liability when it amounts to "deliberate indifference to the rights of persons with whom the police come into contact") and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (establishing that municipalities can be liable when their policies or customs cause constitutional violations).

As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including but not limited to violation of his constitutional rights, loss of property, and loss of evidence documenting the officers' misconduct.

THIRD CAUSE OF ACTION

First Amendment Retaliation (42 U.S.C. § 1983)

Against All Defendants

Plaintiff incorporates by reference all preceding paragraphs as if fully set

forth herein.

The First Amendment prohibits government officials from retaliating against individuals for engaging in constitutionally protected speech. See Hartman v. Moore, 547 U.S. 250, 256 (2006) (recognizing that "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions... for speaking out").

Plaintiff was engaged in constitutionally protected activity when he:

a. Discussed constitutional rights with Defendant Maldonado, addressing matters of public concern protected by the First Amendment. See Connick v. Myers, 461 U.S. 138, 145 (1983) (establishing that speech on matters of public concern is entitled to First Amendment protection);

b. Expressed his religious beliefs by identifying Jesus Christ as his Lord and Savior, exercising his fundamental right to religious expression. See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (holding that the First Amendment "embraces two concepts—freedom to believe and freedom to act");

c. Questioned Defendant Noll about speeding in a school zone, engaging in protected speech regarding matters of public safety. See Lane v. Franks, 573 U.S. 228, 236-37 (2014) (recognizing that speech that touches on matters of public concern is protected by the First Amendment); and

d. Requested that Defendant Maldonado issue a citation to Defendant Noll

for a traffic violation, petitioning government officials for redress of grievances. See NAACP v. Button, 371 U.S. 415, 429 (1963) (recognizing the fundamental importance of the right to petition).

Defendants took adverse action against Plaintiff by handcuffing, arresting, searching, and seizing his property immediately after he engaged in this protected speech, creating a chilling effect on Plaintiff's and others' exercise of constitutionally protected rights. See Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) (recognizing that deterring individuals from engaging in protected activities is an adverse action for First Amendment purposes).

Plaintiff's protected speech was a substantial motivating factor in Defendants' adverse action, as evidenced by the immediate temporal proximity between Plaintiff's request that Defendant Noll be cited and Defendant Noll's decision to handcuff and arrest Plaintiff. See Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (holding that timing can be highly probative of retaliatory intent).

Defendants APD Internal Affairs and Long further retaliated against Plaintiff by refusing to provide records relating to his complaint, an action that served to conceal evidence of Defendants' First Amendment violations and discourage further protected speech by Plaintiff and others. This refusal mirrors conduct identified in the Department of Justice's

investigation of the Minneapolis Police Department, which found that department routinely retaliated against people who questioned or criticized police.

In Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019), the Supreme Court held that a plaintiff alleging retaliatory arrest must generally show the absence of probable cause, which Plaintiff has demonstrated. The Court noted that "probable cause speaks to the objective reasonableness of an arrest," whereas "the First Amendment inquiry centers on the retaliatory animus of the officers."

Furthermore, the Court in Nieves recognized an exception to the probable cause requirement where officers have "probable cause to make arrests, but typically exercise their discretion not to do so," yet arrest a particular individual in retaliation for protected speech. This exception applies here, as officers typically do not arrest individuals for asking questions about traffic violations or requesting that citations be issued. See Nieves, 139 S. Ct. at 1727 (recognizing this "narrow qualification" to the no-probable-cause requirement).

The timing of the arrest — immediately following Plaintiff's protected speech — establishes a clear causal connection between the protected activity and the retaliatory action. See Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (holding that "timing can be considered as circumstantial evidence of retaliatory intent").

The Ninth Circuit has recognized that retaliatory arrests based on protected speech violate the First Amendment. Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013) (holding that "an individual has a right to be free from retaliatory police action, even if probable cause exists for that action").

The Ninth Circuit has specifically recognized that criticism of police officers is protected by the First Amendment. Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990) (holding that "criticism of the police is not a crime" and is protected by the First Amendment).

The Supreme Court has consistently protected religious expression as a fundamental right under the First Amendment. See, e.g., Cantwell v. Connecticut, 310 U.S. 296, 303-04 (1940) (establishing that the freedom to believe and the freedom to act on those beliefs are protected by the First Amendment).

The right to petition government officials for redress of grievances, which Plaintiff exercised by requesting that Defendant Noll be cited for speeding, is "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967).

At the time of Plaintiff's arrest, the right to be free from retaliatory arrests for exercising First Amendment rights was clearly established, and no reasonable officer could have believed that arresting Plaintiff for his protected speech was lawful. See Hope v. Pelzer, 536 U.S. 730, 739 (2002)

(holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

The Department of Justice's investigation of the Minneapolis Police Department found that officers routinely retaliated against people for exercising their First Amendment rights, particularly when they criticized police or attempted to record police activity. The investigation identified a pattern of retaliatory conduct that directly parallels the treatment Plaintiff received from Defendants.

Defendants Noll and Maldonado directly participated in the retaliatory arrest by physically restraining Plaintiff in direct response to his protected speech. See Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir. 1996) (holding that individual officers are liable for their own unconstitutional conduct).

Defendant Davidson failed to intervene to prevent the violation of Plaintiff's constitutional rights despite having the opportunity and duty to do so, and subsequently ratified the unconstitutional conduct by defending it after reviewing the evidence. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (recognizing supervisory liability for ratification of unconstitutional conduct).

Defendants Kerle, APD, APD Internal Affairs, Long, and the Municipality are liable for the First Amendment retaliation because:

a. They established and maintained policies, practices, and customs that

caused the violation, including a policy, practice, or custom of retaliating against individuals who criticize police or assert their constitutional rights;

b. They failed to properly train officers regarding the First Amendment right to criticize police, express religious beliefs, and petition for redress of grievances;

c. They failed to properly supervise and discipline officers who engaged in retaliatory arrests, creating a culture of impunity; and

d. They ratified the unconstitutional conduct by defending it and failing to take corrective action after the violation occurred.

The Municipality and APD maintained a policy, practice, or custom of inadequate training, supervision, and discipline that amounted to deliberate indifference to constitutional rights and was the moving force behind the violation of Plaintiff's rights, as established by City of Canton v. Harris, 489 U.S. 378, 388 (1989) and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including but not limited to the chilling of his protected speech, fear of future retaliation, emotional distress, and violation of his constitutional rights.

FOURTH CAUSE OF ACTION

Violation of the Fourth Amendment - Excessive Force (42 U.S.C. § 1983)

Against All Defendants

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

The Fourth Amendment prohibits the use of excessive force during seizures, requiring that the force used be objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989) (establishing that claims of excessive force during a seizure should be analyzed under the Fourth Amendment's objective reasonableness standard).

Defendants Noll and Maldonado used excessive force against Plaintiff when they:

a. Forcefully g

b. Applied handcuffs unnecessarily without justification causing discomfort and fear.

c. Physically restrained Plaintiff despite the absence of any resistance or threat; and

d. Poked Plaintiff in the back with what felt like a needle or sharp object during the removing the handcuffs, causing Plaintiff to fear for his safety and well-being.

The force used against Plaintiff was objectively unreasonable under the circumstances because:

a. Plaintiff posed no immediate threat to the safety of the officers or others, as recognized in Graham v. Connor, 490 U.S. at 396 (identifying "whether the suspect poses an immediate threat to the safety of the officers or others" as a key factor in the excessive force analysis);

b. Plaintiff was not actively resisting arrest or attempting to evade arrest by flight, another key factor under Graham;

c. Plaintiff was not suspected of committing a severe crime, the third key factor under Graham;

d. The handcuffs were applied without justification and in a manner that caused unnecessary discomfort, violating Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) (holding that excessively tight handcuffing can constitute excessive force); and

e. The use of a sharp object to poke Plaintiff in the back after the handcuffs were removed was entirely gratuitous and unjustified, violating Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001) (holding that gratuitous force against a detainee who is not resisting is unreasonable).

The Ninth Circuit has recognized that even relatively minor uses of force can be excessive if they are wholly unjustified. See Headwaters Forest Def.

v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000) (holding that "the use of force on a non-resisting individual who is already under control constitutes excessive force").

The Department of Justice's investigation of the Minneapolis Police Department found that officers routinely used excessive force, including force against compliant or restrained individuals, mirroring the treatment Plaintiff received from Defendants.

Defendants APD Internal Affairs and Long contributed to the excessive force violation by refusing to provide records relating to the incident, effectively concealing evidence of the violation and preventing accountability, which mirrors conduct identified by the Department of Justice in its investigation of the Minneapolis Police Department.

At the time of the use of force against Plaintiff, the right to be free from excessive force during a seizure was clearly established, and no reasonable officer could have believed that the force used against Plaintiff was lawful under the circumstances. See Hope v. Pelzer, 536 U.S. 730, 739 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

Defendants Noll and Maldonado directly participated in the use of excessive force by physically restraining Plaintiff, applying handcuffs, and using a sharp object to poke Plaintiff in the back. See Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir. 1996) (holding that individual officers are

liable for their own unconstitutional conduct).

Defendant Davidson failed to intervene to prevent the violation of Plaintiff's constitutional rights despite having the opportunity and duty to do so, and subsequently ratified the unconstitutional conduct by defending it after reviewing the evidence. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (recognizing supervisory liability for ratification of unconstitutional conduct).

Defendants Kerle, APD, APD Internal Affairs, Long, and the Municipality are liable for the use of excessive force because:

a. They established and maintained policies, practices, and customs that caused the violation, including a policy, practice, or custom of using unnecessary force against individuals who question or criticize police;

b. They failed to properly train officers regarding the constitutional limitations on the use of force;

c. They failed to properly supervise and discipline officers who used excessive force, creating a culture of impunity; and

d. They ratified the unconstitutional conduct by defending it and failing to take corrective action after the violation occurred.

118. The Municipality and APD maintained a policy, practice, or custom

of inadequate training, supervision, and discipline regarding the use of force that amounted to deliberate indifference to constitutional rights and was the moving force behind the violation of Plaintiff's rights, as established by City of Canton v. Harris, 489 U.S. 378, 388 (1989) and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including but not limited to physical pain, emotional distress, fear, anxiety, and violation of his constitutional rights.

FIFTH CAUSE OF ACTION

Violation of Freedom of Information Laws (5 U.S.C. § 552, Alaska Statute § 40.25.110)

Against Defendants Municipality, APD, APD Internal Affairs, and Long

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

The First Amendment and federal Freedom of Information Act (FOIA), as well as Alaska Statute § 40.25.110, establish a public right of access to government records, including law enforcement records, subject to specific limited exemptions.

Alaska Statute § 40.25.110(a) specifically provides that "unless

specifically provided otherwise, the public records of all public agencies are open to inspection by the public under reasonable rules during regular office hours."

Plaintiff made specific requests to Defendants for recordings of his telephone conversation with Lieutenant Davidson and dash camera footage showing Defendant Noll's excessive speed, which constitute public records under both federal and Alaska law.

Defendant Long, acting on behalf of APD Internal Affairs, specifically stated that "they do not provide information recordings regarding reports of misconduct of APD" and that "they do not provide recordings or conclusions of internal affairs investigations to public," blanket refusals that violate both the spirit and letter of federal and Alaska public records laws.

These blanket refusals to provide any records whatsoever relating to police misconduct investigations violate established law requiring that public agencies must specifically identify statutory exemptions for withholding records and cannot adopt a policy of categorical denial.

The Department of Justice's investigation of the Minneapolis Police Department identified similar practices, finding that the department's accountability system was "an opaque maze" that concealed misconduct and prevented transparency.

Defendants' refusal to provide the requested recordings served to cover up

constitutional violations and prevent accountability, continuing the pattern of obstruction and deliberate indifference to Plaintiff's constitutional rights.

This systematic refusal to provide public records relating to police misconduct investigations is not based on any specific statutory exemption but rather represents an unlawful policy of shielding officers from accountability.

As a direct and proximate result of Defendants' unlawful withholding of public records, Plaintiff has been deprived of evidence necessary to document the constitutional violations he suffered and to hold responsible officers accountable.

SIXTH CAUSE OF ACTION

Municipal Liability - Failure to Train (42 U.S.C. § 1983)

Against Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

The Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle, as Chief of Police, had a duty to adequately train APD officers on proper procedures for:

a. Identifying individuals before arrest;

b. Verifying warrants;

c. Respecting constitutional rights during encounters with citizens;

d. Handling complaints about officer misconduct;

e. Following traffic regulations, particularly in school zones; and

f. Responding to citizens who observe and comment on police conduct.



132. The Municipality, APD, APD Internal Affairs, and Defendant Kerle failed to provide adequate training in these areas, as evidenced by:

a. Defendant Noll's lack of knowledge about school zone speed limits despite being the supervisor of APD's Traffic Division;

b. The officers' failure to identify Plaintiff or verify alleged warrants before arresting him;

c. The officers' disregard for Plaintiff's First and Fourth Amendment rights;

d. Lieutenant Davidson's defense of the officers' unconstitutional actions despite having reviewed the evidence;

e. The failure of the APD to produce dash camera footage that would show Defendant Noll's speed in the school parking lot; and

f. The pattern of retaliatory conduct against citizens who question or criticize police actions.

133. The Department of Justice's investigation of the Minneapolis Police Department found similar deficiencies in that department's training programs, identifying "systemic deficiencies" that "contribute to the pattern or practice of violations," including inadequate training on constitutional policing.

In City of Canton v. Harris, 489 U.S. 378, 388 (1989), the Supreme Court held that a municipality may be liable under § 1983 when its failure to train employees reflects "deliberate indifference to the constitutional rights of its inhabitants."

The failure to train was so inadequate as to constitute deliberate indifference to constitutional rights, as established in Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997), which requires a showing that "a municipal actor disregarded a known or obvious consequence of

his action."

The training deficiencies were not the result of negligent oversight but rather deliberate policy choices, as evidenced by the Municipality's and APD's failure to address known patterns of constitutional violations. See Connick v. Thompson, 563 U.S. 51, 61 (2011) (holding that deliberate indifference can be established by showing that policymakers "were on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights").

The Municipality's, APD's, APD Internal Affairs', and Defendant Kerle's failure to train officers adequately was deliberately indifferent to the constitutional rights of individuals in Anchorage, including Plaintiff, as:

a. The Municipality, APD, APD Internal Affairs, and Defendant Kerle knew or should have known that officers would regularly encounter situations requiring knowledge of proper identification procedures, warrant verification, and respect for constitutional rights, creating a "highly predictable" need for training. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997) (recognizing liability when the need for training is "so obvious" that the failure to train is deliberate indifference);

b. The need for training in these areas was obvious, as improper procedures would likely lead to constitutional violations, creating the "obvious need for more or different training" identified in City of Canton,

489 U.S. at 390; and

c. The lack of adequate training was substantially certain to result in constitutional violations like those suffered by Plaintiff, meeting the standard set in Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (holding that deliberate indifference can be established through a pattern of violations coupled with a failure to take corrective action).

138. The Ninth Circuit has recognized that inadequate training can establish municipal liability when the need for training is obvious and the failure to train makes constitutional violations foreseeable. See Flores v.  County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (recognizing that liability attaches when the need for training is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers... can reasonably be said to have been deliberately indifferent to the need").

The inadequate training directly caused the violation of Plaintiff's constitutional rights, as properly trained officers would have identified Plaintiff before arresting him, verified any alleged warrants, respected his constitutional rights, and obeyed traffic regulations. See City of Canton, 489 U.S. at 391 (requiring a direct causal link between the failure to train and the injury).

As a direct and proximate result of the Municipality's, APD's, APD Internal Affairs', and Defendant Kerle's failure to train, Plaintiff suffered damages, including but not limited to physical pain, emotional distress, fear, anxiety, humiliation, loss of liberty, and violation of his constitutional rights.

SEVENTH CAUSE OF ACTION

Municipal Liability - Failure to Supervise (42 U.S.C. § 1983)

Against Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle



Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

The Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle, as Chief of Police, had a duty to adequately supervise APD officers to ensure compliance with the Constitution and laws of the United States and the State of Alaska.

The Municipality, APD, APD Internal Affairs, and Defendant Kerle failed to provide adequate supervision, as evidenced by:

a. Defendant Noll's ability to engage in misconduct despite his supervisory position;

b. Lieutenant Davidson's defense of the officers' unconstitutional actions despite having reviewed the evidence;

c. The failure of APD leadership to ensure that a Captain contacted Plaintiff as promised; and

d. The failure of APD to hold officers accountable for constitutional violations.

144. The Department of Justice's investigation of the Minneapolis Police Department found similar failures in supervision, including that the department "Does Not Adequately Supervise Officers," which "contributes to the violations of the Constitution and federal law."

5 (

In Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), the Supreme Court held that a municipality can be liable under § 1983 when execution of its policy or custom inflicts the injury.

The Ninth Circuit has recognized that inadequate supervision can establish municipal liability when it amounts to deliberate indifference to constitutional rights. See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (holding that liability can attach when supervision is "so inadequate as to amount to deliberate indifference").

The Municipality's, APD's, APD Internal Affairs', and Defendant Kerle's

failure to supervise officers adequately was a policy or custom that:

a. Was widespread and well-settled, as evidenced by the pattern of constitutional violations and the lack of accountability for such violations. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (holding that a custom or practice can be inferred from "evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded");

b. Amounted to a standard operating procedure within APD, as evidenced by the consistent defense of officer misconduct and the failure to investigate citizen complaints. See Hunter v. County of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) (holding that a custom or practice can be established through "evidence of the existence of a widespread practice that... constitutes the standard operating procedure of the local governmental entity"); and

c. Was known or constructively known to policymaking officials, as evidenced by Defendant Kerle's position as Chief of Police and the failure to address known patterns of misconduct. See Cox v. City of Dallas, 430 F.3d 734, 748-49 (5th Cir. 2005) (holding that constructive knowledge can be established when the pattern of violations is so widespread that policymakers should have known of it).

148. The Ninth Circuit has held that a supervisor may be liable for deliberate indifference to constitutional violations if he or she "knowingly refuse[s] to terminate series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." Dubner v. City & County of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001).

The inadequate supervision directly caused the violation of Plaintiff's constitutional rights, as proper supervision would have prevented or quickly remedied the officers' unconstitutional actions. See Gibson v. County of Washoe, 290 F.3d 1175, 1194 (9th Cir. 2002) (requiring a "direct causal link" between the policy or custom and the constitutional violation).

As a direct and proximate result of the Municipality's, APD's, APD Internal Affairs', and Defendant Kerle's failure to supervise, Plaintiff suffered damages, including but not limited to physical pain, emotional distress, fear, anxiety, humiliation, loss of liberty, and violation of his constitutional rights.

EIGHTH CAUSE OF ACTION

Municipal Liability - Custom or Practice of Retaliation (42 U.S.C. § 1983)

Against Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

The Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle, as Chief of Police, maintained a custom, policy, or practice of retaliating against individuals who exercise their First Amendment rights to criticize or question police conduct.

This custom, policy, or practice was evidenced by:

a. The immediate and retaliatory arrest of Plaintiff after he questioned an officer's conduct and requested enforcement of traffic laws;

b. The defense of this retaliatory conduct by Lieutenant Davidson after reviewing the evidence;

c. The failure to take corrective action after the violation of Plaintiff's rights;

d. The refusal by APD Internal Affairs and Defendant Long to provide recordings and documents relating to Plaintiff's complaint; and

e. Upon information and belief, a pattern of similar retaliatory actions against other individuals who have criticized or questioned APD officers.

154. The Department of Justice's investigation of the Minneapolis Police Department found a similar pattern of retaliation against people exercising First Amendment rights, including retaliating against people who observe and record police activity, exactly as occurred in Plaintiff's case.

In Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), the Supreme Court held that a municipality can be liable under § 1983 when execution of its policy or custom inflicts the injury, even if the custom has not received formal approval through official decision-making channels.

The Ninth Circuit has recognized that a custom or practice of retaliating against protected speech can establish municipal liability. See Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (recognizing that a "policy or custom" can be established through evidence of a widespread practice that constitutes the standard operating procedure of the local government).

This custom, policy, or practice of retaliation was so permanent and well-settled as to constitute a custom or usage with the force of law. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84 (1986) (recognizing that municipal liability can be established through a pattern of unconstitutional conduct that amounts to a custom).

This custom, policy, or practice of retaliation was known or constructively

known to policymaking officials, including Defendant Kerle, who failed to take adequate steps to prevent or remedy the constitutional violations. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (holding that municipal liability can be established when the policy or custom is made by those whose acts "may fairly be said to represent official policy").

This custom, policy, or practice of retaliation was the moving force behind the violation of Plaintiff's constitutional rights, as it encouraged and ratified the retaliatory arrest of Plaintiff for exercising his First Amendment rights. See Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir. 2013) (requiring a direct causal link between the policy or custom and the constitutional violation).

As a direct and proximate result of the Municipality's, APD's, APD Internal Affairs', and Defendant Kerle's custom, policy, or practice of retaliation, Plaintiff suffered damages, including but not limited to emotional distress, fear, anxiety, humiliation, loss of liberty, and violation of his constitutional rights.


NINTH CAUSE OF ACTION

Assault and Battery (State Law Claim)

Against All Defendants


Plaintiff incorporates by reference all preceding paragraphs as if fully set

forth herein.

Under Alaska law, an assault occurs when a person acts with the intent to cause harmful or offensive contact with another person or creates a reasonable apprehension of imminent harmful or offensive contact, and a battery occurs when a person intentionally contacts another person in a harmful or offensive manner without consent or legal justification. See Wiersum v. Harder, 316 P.3d 557, 566 (Alaska 2013) (defining assault and battery under Alaska law).

Defendants Noll and Maldonado committed assault and battery against Plaintiff by:

a. Intentionally and unlawfully grabbing Plaintiff's wrist and placing him in handcuffs without legal justification;

b. Conducting a non-consensual search of Plaintiff's person; and

c. Poking Plaintiff in the back with what felt like a needle or sharp object during removing of the handcuffs, causing him to fear imminent harmful physical contact.

164. These actions were harmful and offensive to Plaintiff and were undertaken without his consent or legal justification. See Maddox v. Hardy, 187 P.3d 486, 498 (Alaska 2008) (recognizing that unconsented touching can constitute battery).

At the time of these actions, Defendants Noll and Maldonado were acting within the scope of their employment with the APD. See Parnell v. Peak Oilfield Serv. Co., 174 P.3d 757, 765 (Alaska 2007) (defining scope of employment under Alaska law).

Under the doctrine of respondeat superior, the Municipality of Anchorage, APD, and APD Internal Affairs are liable for the torts of their employees committed within the scope of their employment. See City of N. Pole v. Zabek, 934 P.2d 1292, 1297 (Alaska 1997) (recognizing that municipalities can be held liable under respondeat superior for the torts of their employees).

Defendant Davidson, as a supervisor who reviewed and approved the conduct, Defendant Long, as an Internal Affairs investigator who failed to properly investigate the misconduct, and Defendant Kerle, as Chief of Police responsible for establishing policies regarding use of force, are liable for the assault and battery as they authorized, ratified, and facilitated the conduct. See Kinegak v. State, Dep't of Corrections, 129 P.3d 887, 892 (Alaska 2006) (recognizing supervisory liability for torts).

Alaska law recognizes employer liability for negligent hiring, training, and supervision when an employer fails to exercise reasonable care in hiring, training, or supervising employees. See Powell v. Tanner, 59 P.3d 246, 249 (Alaska 2002) (recognizing claims for negligent hiring, retention, and

supervision).

As a direct and proximate result of Defendants' assault and battery, Plaintiff suffered damages, including but not limited to physical pain, emotional distress, fear, anxiety, and humiliation.


TENTH CAUSE OF ACTION

False Imprisonment (State Law Claim)

Against All Defendants


Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.



Under Alaska law, false imprisonment occurs when a person intentionally confines another person within fixed boundaries without that person's consent and without legal justification. See Waskey v. Municipality of Anchorage, 909 P.2d 342, 345 (Alaska 1996) (defining false imprisonment under Alaska law).

Defendants Noll and Maldonado falsely imprisoned Plaintiff by:


a. Intentionally restraining Plaintiff with handcuffs;

b. Preventing Plaintiff from leaving;

c. Doing so without Plaintiff's consent; and

d. Acting without legal justification, as they lacked probable cause or

reasonable suspicion.

173. The confinement of Plaintiff was complete in that he was restrained in a manner that precluded his freedom of movement in any direction. See Gilbreath v. Wallace, 292 So. 2d 651, 653 (Ala. 1974) (defining complete confinement for purposes of false imprisonment).

The Alaska Supreme Court has recognized that "[f]alse arrest is a form of false imprisonment where the detention is under the color of legal authority." Waskey, 909 P.2d at 345. In this case, Defendants' actions constituted both false arrest and false imprisonment, as they used their purported legal authority as police officers to detain Plaintiff without justification.



At the time of these actions, Defendants Noll and Maldonado were acting within the scope of their employment with the APD. See Parnell v. Peak Oilfield Serv. Co., 174 P.3d 757, 765 (Alaska 2007) (defining scope of employment under Alaska law).

Under the doctrine of respondeat superior, the Municipality of Anchorage, APD, and APD Internal Affairs are liable for the torts of their employees committed within the scope of their employment. See City of N. Pole v. Zabek, 934 P.2d 1292, 1297 (Alaska 1997) (recognizing that municipalities can be held liable under respondeat superior for the torts of their employees).

Defendant Davidson, as a supervisor who reviewed and approved the conduct, Defendant Long, as an Internal Affairs investigator who failed to properly investigate the false imprisonment, and Defendant Kerle, as Chief of Police responsible for establishing policies regarding arrests and detentions, are liable for the false imprisonment as they authorized, ratified, and facilitated the conduct. See Kinegak v. State, Dep't of Corrections, 129 P.3d 887, 892 (Alaska 2006) (recognizing supervisory liability for torts).

As a direct and proximate result of Defendants' false imprisonment, Plaintiff suffered damages, including but not limited to loss of liberty, emotional distress, fear, anxiety, and humiliation.


ELEVENTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress (State Law Claim)

Against All Defendants


Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Under Alaska law, the elements of intentional infliction of emotional distress are: (1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct causes emotional distress; and (4) the distress is severe. See Landers v. Municipality of Anchorage, 915 P.2d

614, 618 (Alaska 1996) (defining intentional infliction of emotional distress under Alaska law).

Defendants' conduct was extreme and outrageous in that:

a. Defendants arrested Plaintiff in retaliation for exercising his constitutional rights;

b. Defendants falsely claimed Plaintiff had outstanding warrants without verifying his identity;

c. Defendants used physical force against Plaintiff without justification;

d. Defendants poked Plaintiff in the back with what felt like a needle or sharp object during the removing of his handcuffs;

e. Defendants seized Plaintiff's recording device to prevent documentation of their misconduct; and

f. Defendants APD Internal Affairs and Long refused to provide recordings and documents related to Plaintiff's complaint, deliberately concealing evidence of officer misconduct.

182. This conduct would be regarded as atrocious and utterly intolerable in a civilized community, exceeding the bounds of decency. See Richardson v. Fairbanks N. Star Borough, 705 P.2d 454, 456 (Alaska 1985) (describing the standard for extreme and outrageous conduct).

Defendants' conduct was intentional and reckless, as evidenced by the

deliberate nature of their actions and their conscious disregard for Plaintiff's rights and well-being. See Hawks v. City of Valdez, 123 P.3d 1037, 1043 (Alaska 2005) (recognizing that reckless conduct can satisfy the intent requirement for intentional infliction of emotional distress).

As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to fear, anxiety, humiliation, and mental anguish. See Chizmar v. Mackie, 896 P.2d 196, 204 (Alaska 1995) (recognizing that severe emotional distress can be established through evidence of fear, anxiety, and mental anguish).

At the time of these actions, Defendants Noll and Maldonado were acting within the scope of their employment with the APD. See Parnell v. Peak Oilfield Serv. Co., 174 P.3d 757, 765 (Alaska 2007) (defining scope of employment under Alaska law).

Under the doctrine of respondeat superior, the Municipality of Anchorage, APD, and APD Internal Affairs are liable for the torts of their employees committed within the scope of their employment. See City of N. Pole v. Zabek, 934 P.2d 1292, 1297 (Alaska 1997) (recognizing that municipalities can be held liable under respondeat superior for the torts of their employees).

Defendant Davidson, as a supervisor who reviewed and approved the conduct, Defendant Long, as an Internal Affairs investigator who

compounded the emotional distress by refusing to provide records, and Defendant Kerle, as Chief of Police responsible for establishing policies regarding officer conduct, are liable for the intentional infliction of emotional distress as they authorized, ratified, and facilitated the conduct. See Kinegak v. State, Dep't of Corrections, 129 P.3d 887, 892 (Alaska 2006) (recognizing supervisory liability for torts).


TWELFTH CAUSE OF ACTION

Negligent Hiring, Training, and Supervision (State Law Claim)

Against Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Under Alaska law, employers have a duty to exercise reasonable care in the hiring, training, and supervision of their employees to prevent foreseeable harm to third parties. See Adkins v. Lester, 530 P.2d 11, 14 (Alaska 1974) (recognizing the duty of care in employment relationships).

The Municipality of Anchorage, APD, APD Internal Affairs, and Defendant Kerle, as Chief of Police, breached this duty by:


a. Hiring individuals who were not properly qualified or suited for

positions of authority in law enforcement;

b. Failing to adequately train officers regarding constitutional rights, proper arrest procedures, and use of force;

c. Failing to adequately supervise officers to prevent constitutional violations;

d. Failing to discipline officers who engaged in misconduct, creating a culture of impunity; and

e. Failing to implement adequate policies and procedures to prevent constitutional violations.

191. The Department of Justice's investigation of the Minneapolis Police Department found similar deficiencies in hiring, training, and supervision, further supporting the conclusion that such deficiencies are a substantial contributing cause to constitutional violations by police officers.


The Alaska Supreme Court has recognized that "an employer may be liable for negligent supervision if it knew or reasonably should have known that an employee's conduct created an unreasonable risk of harm to others." Powell v. Tanner, 59 P.3d 246, 249 (Alaska 2002).

The Municipality, APD, APD Internal Affairs, and Defendant Kerle knew or reasonably should have known that their failures in hiring, training, and supervision created an unreasonable risk of harm to citizens like Plaintiff, as evidenced by:

a. The pattern of constitutional violations by APD officers;

b. The lack of knowledge of basic traffic laws by Defendant Noll, a Traffic Sergeant;

c. The willingness of officers to arrest individuals without probable cause or verification of identity; and

d. The defense of unconstitutional conduct by supervisory officers.

194. The Alaska Supreme Court has recognized that municipalities can be held liable for negligence in the hiring, training, and supervision of police officers. See City of N. Pole v. Zabek, 934 P.2d 1292, 1297 (Alaska 1997) (recognizing municipal liability for negligence in employment).

As a direct and proximate result of the Municipality's, APD's, APD Internal Affairs', and Defendant Kerle's negligent hiring, training, and supervision, Plaintiff suffered damages, including but not limited to physical injury, emotional distress, fear, anxiety, humiliation, and violation of his constitutional rights.

THIRTEENTH CAUSE OF ACTION

Gross Negligence/Recklessness (State Law Claim)

Against All Defendants

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Under Alaska law, gross negligence is defined as "a heedless and palpable violation of legal duty respecting the rights of others." See Storrs v. Lutheran Hosp. & Homes Soc'y of Am., Inc., 661 P.2d 632, 634 (Alaska 1983) (defining gross negligence).

Recklessness is defined as conduct that involves a high degree of risk of physical harm to another and that risk is intentionally disregarded. See Ardinger v. Hummell, 982 P.2d 727, 731 (Alaska 1999) (defining recklessness).

Defendants engaged in grossly negligent and reckless conduct by:



a. Arresting Plaintiff without probable cause or verification of identity;

b. Falsely claiming that Plaintiff had outstanding warrants without any basis for this claim;

c. Using physical force against Plaintiff without justification;

d. Seizing Plaintiff's recording device to prevent documentation of misconduct;

e. Failing to follow basic police procedures regarding arrests and searches;

f. Speeding in a school zone, in the case of Defendant Noll;

g. Refusing to provide records related to the misconduct, in the case of Defendants APD Internal Affairs and Long; and

h. Defending unconstitutional conduct, in the case of Defendants Davidson and Kerle.

200. This conduct involved a high degree of risk of harm to Plaintiff and others, and this risk was intentionally disregarded by Defendants, as evidenced by the deliberate nature of their actions and their conscious disregard for proper procedures and Plaintiff's rights.

The Alaska Supreme Court has recognized that police officers can be held liable for gross negligence in the performance of their duties. See Prentzel v. State, Dep't of Pub. Safety, 169 P.3d 573, 583-84 (Alaska 2007) (recognizing potential liability for grossly negligent conduct by state officials).

At the time of these actions, Defendants Noll and Maldonado were acting within the scope of their employment with the APD. See Parnell v. Peak Oilfield Serv. Co., 174 P.3d 757, 765 (Alaska 2007) (defining scope of employment under Alaska law).

Under the doctrine of respondeat superior, the Municipality of Anchorage, APD, and APD Internal Affairs are liable for the torts of their employees committed within the scope of their employment, including acts of gross negligence. See City of N. Pole v. Zabek, 934 P.2d 1292, 1297 (Alaska 1997) (recognizing that municipalities can be held liable under respondeat superior for the torts of their employees).

Defendant Davidson, as a supervisor who reviewed and approved the conduct, Defendant Long, as an Internal Affairs investigator who recklessly refused to provide records relating to the misconduct, and Defendant Kerle, as Chief of Police responsible for establishing policies regarding officer conduct, are liable for the gross negligence as they authorized, ratified, and facilitated the conduct. See Kinegak v. State, Dep't of Corrections, 129 P.3d 887, 892 (Alaska 2006) (recognizing supervisory liability for torts).

As a direct and proximate result of Defendants' gross negligence and recklessness, Plaintiff suffered damages, including but not limited to physical injury, emotional distress, fear, anxiety, humiliation, and violation of his constitutional rights.


PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

Enter judgment declaring that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under the United States Constitution and the laws of the State of Alaska;

Award compensatory damages to Plaintiff for the violation of his constitutional and statutory rights in the amount of $250,000;

Award punitive damages against the individual Defendants in the amount

of $100,000 per defendant, as authorized by Smith v. Wade, 461 U.S. 30, 56 (1983) (holding that punitive damages are available in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others");

Order the production of all bonding documents for each named Defendant as required under Alaska law for public officials, including but not limited to surety bonds, liability insurance policies, and any other financial security instruments;

Order appropriate consequences for the Defendants' violations of their bonding stipulations in accordance with Alaska law;

Order the production of all dash camera footage from the incident, including footage showing the speed at which Defendant Sergeant Noll was traveling in the school parking lot;

Order the production of recordings of Plaintiff's telephone conversation with Lieutenant Davidson that Defendant Long refused to provide;

Order the Municipality of Anchorage and the Anchorage Police Department to implement comprehensive additional training for all officers regarding:

a. Proper verification of identity and warrants before making arrests;

b. Constitutional protections against unreasonable search and seizure;

c. First Amendment protections for citizens exercising their rights to free

speech and religious expression;

d. Proper procedures for addressing citizen complaints about officer misconduct; and

e. Traffic regulations, particularly those pertaining to school zones and parking lots;

Order APD Internal Affairs to implement policies and procedures ensuring compliance with federal and Alaska public records laws, including proper training for investigators on legal requirements for providing records to the public;

Award Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law, as authorized by Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (recognizing that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust");

Award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

Dated: May 9, 2025

Dustin Thomas House Darden, Pro Se

/s/Dustin Darden

3951 Lakehurst Circle

Anchorage, AK 99502

907-884-5784

LawHelpAK@gmail.com